UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KEVIN MOODY and VERONICA MOODY,** individually and as parents and next friend of **TYLER MOODY, deceased,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) Case No. 03-CV-0784-CVE-PJC ) |
| **FORD MOTOR COMPANY,** a Delaware Corporation, | ) ) ) ) |
| **Defendant.** | ) |

### OPINION AND ORDER

Now before the Court is Ford Motor Company's Choice of Law Motion and Brief in Support Regarding Plaintiffs' Punitive Damages Claims (Dkt. # 76). In this motion, defendant argues that, with regard to plaintiffs' request for punitive damages, the applicable law is that of Michigan, defendant's principal place of business, rather than that of Oklahoma. Under Michigan law, punitive damages may not be awarded. See McAuley v. Gen'l Motors Corp., 578 N.W.2d 282, 285 (Mich. 1998); Fellows v. Superior Products Co., 506 N.W.2d 534, 536 (Mich. App. 1993). Under Oklahoma law, punitive damages may be imposed in a products liability case. Okla. Stat. Ann. tit. 23, § 9.1 (1995). As there is a genuine conflict of law in this diversity action,[1] the Court applies the choice of law rule of the forum state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941).

---

[1]  Plaintiffs are citizens of Oklahoma; defendant is a Delaware corporation with its principal place of business in Michigan.

Oklahoma has adopted the Restatement (Second) of Conflict of Laws for its choice of law rule, which provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parities under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>     (a) the place where the injury occurred,
>     (b) the place where the conduct causing the injury occurred,
>     (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>     (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Rest. 2d Confl. § 145 (1971); see Brickner v. Gooden, 525 P.2d 632 (Okla. 1974). "If the primary purpose of the tort rule involved is to deter or punish misconduct . . . , the state where the conduct took place may be the state of dominant interest and thus that of most significant relationship." Rest. 2d Confl. § 145 cmt. c.

Essentially, the "most significant relationship" standard favors the state whose law is most directly connected to the parties and the underlying transaction. See Ysbrand v. DaimlerChrysler Corp., 81 P.3d 618, 625 (Okla. 2003). For purposes of determining which state's law applies, section 6(2) identifies the following factors:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Rest. 2d Confl. § 6. The "most significant relationship" test analyzes which state's "relevant policies" would be most advanced if applied and evaluates the weight of the contacts within interested states. The issue is which sovereign's interest is the most "significant." See Judge v. American Motors Corp., 908 F.2d 1565, 1569 (11th Cir. 1990).

Defendant argues that the "conduct causing the injury" is the design of an allegedly defective vehicle. However, while the vehicle was designed and tested in Michigan, defendant is a well-established international corporation which markets and sells its vehicles throughout the nation, including in Oklahoma. Further, Oklahoma's choice of law rule requires consideration of other contacts and policies beyond the causative conduct. Pertinent contacts include: the injury occurred in Oklahoma; the plaintiffs' decedent was domiciled in Oklahoma; the record contains no evidence that plaintiffs have any connection with Michigan; the vehicle was insured and registered in Oklahoma; and Oklahoma is the place where the relationship between the parties is centered. Although the place of injury is not automatically the jurisdiction that is primarily concerned with the issue of recovery of punitive damages, its law will be applied unless a different jurisdiction is found to have a greater interest. See In the Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 644 F.2d 594, 615 (7th Cir. 1981) ("The old rule in many jurisdictions, developed from torts other than air crashes, was that where there was nothing fortuitous about the fact that the injury occurred in a given state, great weight would be given to the law of the place of the injury."). Accordingly, Oklahoma is the location of a greater number of contacts and is the host of those contacts which are more significant to the accident and the parties. See Rest. 2d Confl. § 145(2).

3

Oklahoma's choice of law rule requires the Court to weigh the relevant state policies in addition to state contacts. See Rest. 2d Confl. §§ 145(1), 6(2)(b),(c). The relevant policies of the two interested states are in direct conflict. Michigan has adopted the policy of prohibiting punitive damages to advance the economic interest of the state by attracting industry and insulating entrepreneurs from "excessive financial liability." Kelly v Ford Motor Co., 933 F. Supp. 465, 471 (E.D. Pa. 1996); see also Judge, 908 F.2d at 1570-71. On the other hand, Oklahoma has a related policy of protecting its citizens from future injury due to defective products and of protecting the survivors. See Patten v. GMC, Chevrolet Motor Div., 699 F. Supp. 1500, 1508 (W.D. Okla. 1987). Further, Oklahoma has an interest in deterring manufacturers from manufacturing products that are defective and dangerous. It also has an interest in punishing wrongdoing. Thiry v. Armstrong World Industries, 661 P.2d 515, 517 (Okla. 1983) ("the primary purpose of punitive damages is to punish the defendant and deter similar wrongdoing in the future . . . ."). It is appropriate "that the state whose [policy] interests are most deeply affected should have its local law applied." Rest. 2d Confl. § 6 cmt. f.

Defendant relies on a recent Oklahoma Supreme Court decision which applied Michigan law where there was a genuine conflict of law in a class action suit. Ysbrand, 81 P.3d at 626. In Ysbrand, the Oklahoma Supreme Court found that "Michigan's interest in the conduct of its manufacturer, and thus its connection to the warranty issues, is greater." Id. at 626. In contrast, plaintiffs no longer assert a breach of warranty claim. Further, unlike in Ysbrand where plaintiffs' contacts with defendant were diluted across all fifty states, contacts in this case are concentrated in Oklahoma. See id. at 625 ("Michigan is the only state where conduct relevant to all class members occurred.") (emphasis added).

Oklahoma's legitimate interest in protecting its residents from defective products outweighs Michigan's interest in promoting its economy by shielding its corporate citizens from punitive damages. Oklahoma's policy to punish and deter wrongful conduct within its jurisdiction would lack any teeth if not applied to product liability law. Thus, Oklahoma has a more significant relationship to this litigation and its laws govern plaintiffs' punitive damage claim.

**IT IS THEREFORE ORDERED** that defendant's motion (Dkt. # 76) is **denied**.

**DATED** this 13th day of February, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT