UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN MOODY and VERONICA MOODY, individually and as parents and next friend of TYLER MOODY, deceased, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 03-CV-0784-CVE-PJC ) |
| FORD MOTOR COMPANY, a Delaware Corporation, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiffs have objected to defendant's presentation of any evidence relating to the speed of plaintiffs' decedent's vehicle or the speed limit before and at the time of the automobile accident that caused his death. They cite Black v. M & W Gear Company, 269 F.3d 1220 (10th Cir. 2001), for the proposition that the decedent's conduct is irrelevant in manufacturers' products liability where plaintiff's theory is based on the tendency of a vehicle to roll over. The Court preliminarily overruled plaintiff's objection, because the Court found that evidence of the vehicle's speed was relevant to causation.

On January 16, 2003, Tyler Moody ("Moody") was driving his aunt's two-door 1995 Ford Explorer Sport in Tulsa County, Oklahoma. Moody was driving south on Delaware Avenue, and his friend, Brett Hickman, was in the passenger seat of the vehicle. The road curved as Delaware Avenue turned into 121st Street. The parties dispute some of the facts preceding the accident, but plaintiffs' accident reconstruction expert, George Hall, P.E., has already testified that he believes Moody's vehicle was traveling at approximately 67 miles per hour ("mph") through a curve in the

road.  The posted speed limit on this road was 50 mph, but as vehicles entered the curve, another sign advised drivers of the curve and stated "30 mph.".  At some point before or in the curve, Moody noticed a slower-moving vehicle in front of him.  In a no-passing zone, he moved from the right-hand lane to the left-hand lane to pass the vehicle.  When he was returning to the right-hand lane, Moody started to lose control of his vehicle, over-corrected, and eventually left the road and rolled over at least one and half times.  The vehicle finally settled on its roof.  Moody was killed in the accident and his parents brought this manufacturers' products liability action individually and as next friends of Tyler Moody.

**Causation**

Plaintiffs argue that defendant manufactured a defective product, because it did not manufacture the roof of the Ford Explorer Sport with sufficient strength to withstand a foreseeable rollover.  This theory relies, at least in part, on the crashworthiness doctrine discussed in several Oklahoma Supreme Court opinions.  Plaintiffs claim that evidence relating to the speed of the vehicle before or at the time of the accident is irrelevant, because it does not tend to refute plaintiffs' theory of liability.  They rely solely on Black, and assert that it requires this Court to exclude evidence relating to Moody's behavior before the accident.[1]

In Black, a widow filed a products liability action against a tractor manufacturer when her husband was killed when his tractor rolled over.  Id. At 1226.  The basis of plaintiff's claim was that

---

[1]  Plaintiffs did not file a motion in limine to exclude evidence of the vehicle's speed before the accident, nor was this mentioned as a possible issue in the pretrial order.  See Dkt. # 211.  This case is over three years old, but plaintiffs did not raise this issue with the Court until the first day of trial. At the pretrial conference, the parties stated that the speed of the vehicle was not in dispute.  See Dkt. # 210, at 16-17.

2

the defendant should have manufactured its tractor with a rollover protective structure ("ROPS"), because it knew that tractors tended to roll over. Defendant discovered evidence that the decedent had a blood-alcohol level of .07 at the time of his death, and attempted to introduce this evidence at trial. The district court instructed the jury that evidence of alcohol consumption was irrelevant to the existence of a defect in defendant's product.[2] On appeal, the Tenth Circuit held that the district court did not abuse its discretion by excluding evidence of alcohol consumption on relevancy grounds. The Tenth Circuit distinguished two Oklahoma Supreme Court cases where evidence of alcohol consumption was found to be admissible. The court stated:

> In a products liability case in which contributory negligence is not a defense and misuse is not an issue, the only relevant causation issue is whether defect in the defendant's product was a cause of the injury. In both *Kirkland* and *Fields* the evidence of the plaintiffs' intoxication rebutted the plaintiffs' theories that a defect in the defendants' products had caused the injuries; the evidence of Black's consumption of alcohol, on the other hand, does not address Plaintiff's theory that Black's injuries would not have occurred if a ROPS had been present on Defendants' product.

Id. at 1236. The Tenth Circuit held that evidence of alcohol consumption related to contributory negligence only under the circumstances of that case, and was not relevant.

In a subsequent case, the Oklahoma Supreme Court has clarified Oklahoma law on the crashworthiness doctrine in products liability cases. In Johnson v. Ford Motor Company, 45 P.3d 86 (Okla. 2002), parents filed a products liability action against Ford Motor Company ("Ford") alleging that the seat belt system was defectively designed. Plaintiffs offered evidence that the vehicle's seat belt failed, and this failure enhanced their child's brain injury. Ford responded by presenting evidence that "1) the seat belt was not defective; 2) because of the severity of the

---

[2] The district court also refused to instruct the jury on the affirmative defense of misuse, but defendant waived this argument on appeal.

3

accident, the seat belt would have broken regardless of whether it was defective; and 3) [plaintiff] would have suffered the same injuries even if the seat belt had not broken." Id. at 92. Ford argued that the jury instructions caused the jury to completely disregard Ford's evidence refuting plaintiffs' theory of causation. The Oklahoma Supreme Court held that the jury instructions on causation properly incorporated Ford's evidence relating to the severity of the accident. From the evidence presented at trial, "Ford's theory, that the force of the collision was the cause of Johnson's injuries, was obvious throughout the trial." Id. at 93. The jury had to be instructed that it should find for Ford if plaintiff did not present sufficient evidence to show that Ford's actions caused the child's injury, and the court clarified plaintiff's burden on the issue of causation in products liability cases. The trial court properly instructed the jury that "the plaintiff's personal injuries must have been directly caused by the defect in the truck and its seat belt system." Id. at. 93. The court stated:

> Under the facts presented, Ford's theory was that all of Johnson's injuries were caused by the force of the collision and that none of the injuries were attributable to the failure of the seat belt. Had the jury determined that Ford's theory was correct, under the instructions given, it could have refused to award any damages to Johnson, but it did not.

Id. at 93 n.21. Ford was permitted to introduce evidence concerning the severity of the accident and the force of the collision, because this was a necessary part of Ford's defense and the evidence directly refuted plaintiff's theory of causation.

In two other cases, the Oklahoma Supreme Court permitted the defendant to introduce evidence of plaintiff's alcohol consumption because it was relevant to causation. See Fields v. Volkswagen of America, Inc., 555 P.2d 48, 57 (Okla. 1976) (evidence that plaintiff consumed alcohol and was driving at an excessive speed admissible if these factors caused plaintiff's injury); Kirkland v. General Motors Corp., 521 P.2d 1353, 1366 (Okla. 1974) (evidence of alcohol consumption was relevant to causation when it shows that plaintiff's action rather than a product

4

defect caused the injury). In crashworthiness cases, the jury must be able to determine what injuries plaintiff would have suffered without the presence of a design defect, because it must be able to apportion what part of plaintiff's injuries are the result of a design defect. <u>Lee v. Volkswagen of America, Inc.</u>, 688 P.2d 1283, 1287 (Okla. 1984). Therefore, the facts of the accident are essential to the jury's determination, and defendant must be allowed to present evidence of plaintiff's conduct up to the time of the accident.

In this case, plaintiff apparently intends to present evidence that Ford knew its vehicles could roll over, but that it failed to design the roof of the Ford Explorer Sport to protect consumers from these rollovers. The severity of the accident and the force of the collision are highly relevant factors for the jury's consideration. If Ford is not allowed to present evidence of the speed of the vehicle up to the time of the accident, Ford will not be allowed to present an essential element of its defense. The jury must be able to consider the severity of the accident and the force of the collision, or there will be no way for the jury to determine what part of Moody's injuries were caused by the alleged defect. If Moody was driving at a speed that Ford should have foreseen, plaintiff would certainly present this evidence to show that Ford should have designed against a foreseeable hazard. Likewise, Ford must be allowed to present evidence that plaintiff's behavior was the cause of his injuries.

In <u>Black</u>, the defect and the accident could exist independently, because the injury would have occurred with any rollover accident, regardless of any other factors such as speed or alcohol consumption. The defect was the absence of an ROPS system and the severity or cause of the accident was irrelevant. <u>See</u> <u>Black</u>, 269 F.3d at 1236. In this case, the defect is intertwined with the

severity of the accident, and Black is inapposite.[3] The alleged design defect is the insufficient strength of the vehicle's roof, but strength is a relative concept. It is impossible to separate the alleged design defect from the issue of causation, because Ford could conceivably present evidence that the roof was designed to be strong enough to withstand certain foreseeable rollovers. Whether the roof was strong enough is an issue of fact for the jury to determine, but the jury must be given the relevant evidence to reach its decision. See Johnson, 45 P.3d at 93. Therefore, plaintiff's objection to evidence of the vehicle's speed was properly overruled under Oklahoma law.

**Speed Limit**

Plaintiffs' accident reconstruction expert, George Hall, has already testified about the speed of the vehicle before and at the time of the accident. Hall stated that the speed of the vehicle entering the curve on Delaware Avenue was 67 mph but, immediately before the accident, the vehicle slowed to 42 mph. Hall admitted that the speed limit for Delaware Avenue was 50 mph, and he referred to the yellow sign showing "30 mph" going into the curve as a speed limit. At this stage of the trial, it is not clear to what extent defendant will challenge Hall's testimony, or if defendant will argue that Moody's violation of a speed limit is relevant to the issue of causation. However, it is apparent that plaintiffs' expert has opined as to the vehicle's speed leading up to the accident, and that plaintiffs have already presented testimony that Moody slowed down before the rollover occurred. Brett Hickman, a passenger in the vehicle, presented his version of the facts leading up to the accident.

---

[3] Even if Black were not inapposite, in this diversity case the Court is bound to apply state substantive law, and Johnson is the law as determined by the Oklahoma Supreme Court after the Black decision.

Defendant should be allowed to present its own version of the facts, including the posted speed limits. The speed of the vehicle, regardless of any posted speed limits, is relevant to the issue of causation and the extent of plaintiff's alleged injuries for which defendant should be liable. Hulmes v. Honda Motor Co., Ltd., 960 F. Supp. 844 (D.N.J. 1997) (evidence of speed limit violation admissible in products liability action if jury given proper limiting instruction). Based on Hall's testimony, the jury could conclude that Moody was operating the Ford Explorer Sport in excess of the speed limit. The jury will be given an instruction explaining that contributory negligence is not a defense in manufacturers' products liability cases. Fields, 555 P.2d at 57. Plaintiffs can call a rebuttal witness to contest that the "30 mph" posting is a speed limit. However, Moody's compliance with the applicable speed limit and the speed of the vehicle at the time of the accident are issues of fact for the jury to determine.

**"Prior Bad Act"**

Plaintiffs claim that any evidence concerning the speed of the vehicle until the moment the vehicle commenced rollover is inadmissible as a "prior bad act" under Fed. R. Evid. 404. Plaintiffs argue that evidence of the vehicle's speed at the time of the accident is relevant to proving the cause of Moody's injuries, but that the speed of the vehicle preceding the accident should be excluded. However, in the law of evidence, the occurrence or res gestae in an automobile accident case includes the events immediately surrounding the accident. See Williams v. Melton, 733 F.2d 1492 (11th Cir. 1984) (statement made 10 to 15 minutes after the accident considered part of the occurrence); Continental Cas. Co. v. Jackson, 400 F.2d 285 (8th Cir. 1968) (statements made one hour after automobile accident considered part of original accident). There is no reason to treat events minutes before the accident as part of a separate occurrence from the accident.

Because the Court finds that Moody's conduct during the time leading up to the accident is part of one event, this conduct clearly can not qualify as a prior bad act under Rule 404. <u>United States v. Escobar de Jesus</u>, 187 F.3d 148, 167-68 (1st Cir. 1999) (evidence can not be excluded under Fed. R. Evid. 404(b) if it constitutes part of the same event).  There is no danger of admitting evidence of prior bad acts without prior notice to plaintiffs', because prior bad acts evidence is not at issue.[4]  Plaintiffs' objection, based on Rule 404, to evidence of the vehicle's speed before the accident is overruled.

**IT IS THEREFORE ORDERED** that plaintiffs objection to the presentation of evidence relating to the speed of plaintiffs' decedent's vehicle or speed limit before and at the time of the accident is overruled.  Defendant may present evidence of the vehicle's speed and the speed limit before and at the time of the accident.

**DATED** this 14th day of November, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Plaintiffs filed a motion in limine to preclude defendant from introducing evidence of Moody's prior traffic citations and driving habits. This is classic prior bad acts evidence of conduct occurring at a different time and in a different setting, and the Court granted plaintiff's motion in limine to exclude this evidence.  The distinction between prior traffic violations and Moody's conduct on the day of the accident shows the difference between Rule 404 evidence and acts that are part of the same event or transaction.