## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KEVIN MOODY and VERONICA MOODY,** | ) | |
| **individually and as parents and next friend of** | ) | |
| **TYLER MOODY, deceased,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-CV-0784-CVE-PJC** |
| | ) | |
| **FORD MOTOR COMPANY,** | ) | |
| **a Delaware Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiffs' Motion to Vacate Opinion and Order [Dkt. # 317] or, in the alternative, Motion to Amend Opinion and Order [Dkt. # 317], Request for Hearing and Supporting Brief to All (Dkt. # 322, 323).  Plaintiffs ask the Court to vacate its opinion and order granting defendant Ford Motor Company's ("Ford") motion for a new trial or, in the alternative, to limit the new trial to the issue of damages only.[1]

## I.

Plaintiffs have filed a motion to vacate the Court's opinion and order granting Ford's motion for a new trial pursuant to Fed. R. Civ. P. 59(a).  In this case, plaintiffs filed a manufacturer's products liability claim against Ford for its alleged failure to design the roof of the 1995 Ford

---

[1]     Plaintiffs request a hearing on their motion to vacate.  The Court has reviewed the motion and finds that the Court can rule on plaintiffs' motion without a hearing.

Explorer Sport ("Explorer") to withstand foreseeable rollover accidents.[2]  They alleged that this defect caused the death of their son, Tyler Moody ("Moody" or "decedent"), who died in an automobile accident on January 16, 2003.  The case proceeded to trial and the jury awarded plaintiffs $15 million of compensatory damages.[3]  However, the jury did not find that Ford acted in reckless disregard of the public safety, and punitive damages could not be awarded under Oklahoma law.

Ford filed post-trial motions for judgment as a matter of law under Fed. R. Civ. P. 50 (Dkt. # 289) and for a new trial pursuant to Fed. R. Civ. P. 59(a) (Dkt. # 290).  The Court denied Ford's motion for judgment as a matter of law based on its finding that there was a legally sufficient basis for the jury to rule in favor of plaintiffs.  However, the Court granted Ford's motion for a new trial, because the Court found that the conduct of plaintiffs' counsel prejudiced Ford at trial.  In a detailed opinion and order (Dkt. # 317), the Court discussed plaintiffs' counsel's repeated violations of the Court's evidentiary rulings, plaintiffs' counsel's personal attacks on Ford's witnesses and counsel, and improper and prejudicial arguments made by plaintiffs' counsel during trial.  Based on all of these factors, the Court concluded that a new trial was necessary to ensure that Ford received a fair trial.  Plaintiffs have filed a motion to vacate the Court's opinion and order or, in the alternative, plaintiffs ask the Court to limit the retrial to the issue of damages only.

---

[2]     A more extensive discussion of facts alleged by plaintiffs and the defenses raised by Ford is contained in the Court's opinion and order granting Ford's motion for a new trial.  See Dkt. # 317, at 1-3.

[3]     The Court entered judgment against Ford for $18,339,550.68, because plaintiffs were entitled to prejudgment interest on the $15 million verdict under Oklahoma law.

**II.**

A trial court's decision to grant a motion for new trial under Fed. R. Civ. P. 59(a) is not a final order for purposes of appeal under 28 U.S.C. § 1291.  Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33 (1980).  Plaintiffs' motion to vacate more closely resembles a motion to reconsider, as the underlying order is not a final order or judgment, and the Court will consider plaintiff's motion as a motion to reconsider an interlocutory order under Fed. R. Civ. P. 54(b).  See Raytheon Constructors, Inc. v. Asarco Inc., 368 F.3d 1214, 1217 (10th Cir. 2003).  The Court may, however, call into play the legal standards applicable to a Rule 59(e) motion to alter or amend judgment.  See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand LLP, 322 F.3d 147, 167 (2d Cir. 2003).  A motion to reconsider, like a motion to alter or amend judgment should only be granted upon the following grounds: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."  Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000); see Adams v. Reliance Standard Life Ins. Co., 225 F.3d 1179, 1186 n.5 (10th Cir. 2000).  The Court will exercise its discretion to review plaintiffs' motion under the standards applicable to Rule 59(e) motions.

**III.**

Plaintiffs' counsel raises many arguments in his motion to vacate, but most of these arguments were addressed in the Court's previous opinion and order.  Defendant responds that plaintiffs' counsel is simply asserting the same legal arguments that have previously been rejected,

without citing any new law or evidence, and plaintiffs' motion should be denied on this basis alone.[4]

See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991) ("revisiting the issues already addressed 'is not the purpose of a motion to reconsider'"); All West Pet Supply Co. v. Hill's Pet Products Div., 847 F. Supp. 858, 860 (D. Kan. 1994) ("A motion to reconsider or to alter or amend may not be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court."). The Court sees no reason to reconsider the same arguments advanced in plaintiffs' response to Ford's motion for a new trial, but the Court will address plaintiffs' arguments to the extent that they raise new matters not clearly addressed in the Court's opinion and order (Dkt. # 317). Plaintiffs' counsel's arguments fall into two general categories: (1) the Court's opinion and order constituted an abuse of discretion, because it intruded upon matters solely within the province of the jury; and (2) the Court committed clear error when it concluded that plaintiffs' counsel violated the Court's evidentiary rulings.

## A.

Plaintiffs' counsel argues that the jury's verdict should not have been disturbed, because plaintiffs submitted sufficient evidence to support a finding of liability against Ford. They also claim that Ford failed to demonstrate that it was prejudiced. Specifically, Plaintiffs's counsel argues that the Court erred when it (1) considered matters that Ford did not object to at trial; (2) ordered a new trial without warning plaintiffs' counsel during trial that his conduct could result in a new trial; (3) found that plaintiffs' counsel's conduct prejudiced Ford at trial; (4) considered the deliberative process of the jury as a basis to order a new trial; and (5) used its power to grant a new

---

[4] Ford states that it fully briefed the same arguments raised in plaintiffs' motion to vacate in its motion for a new trial, and Ford declines to reargue matters that it believes were conclusively decided by the Court in its previous opinion and order. See Dkt. # 324, at 1-3.

4

trial to punish plaintiffs' counsel for perceived misconduct during trial. Plaintiffs' counsel's arguments are meritless, and he has not submitted any legal authority that would require the Court to vacate its prior ruling ordering a new trial.

*Consideration of Matters That Ford Did Not Object to at Trial*

Plaintiffs' counsel claims that the Court should not have considered any conduct or statements during post-trial review if Ford failed to raise a timely objection during trial. The Court addressed this issue in its previous opinion and order, and held that this case presented an exception to the general rule that the Court should consider only matters that were objected to at trial. Based on Ryder v. City of Topeka, 814 F.2d 1412 (10th Cir. 1987), the Court noted that it may "exercise its discretion to review allegations of misconduct without a timely objection when the 'interest[s] of judicial fairness' so require." Dkt. # 317, at 12 (quoting Ryder, 814 F.2d at 1424 n.25). This rule prevents a party that has engaged in pervasive or egregious misconduct from raising the timely objection rule as a bar to post-trial review of alleged misconduct in some cases. Plaintiffs' counsel assert that Ryder created an exception for the Tenth Circuit to review matters on appeal when a party failed to object before the trial court, but the Tenth Circuit did not permit district courts to conduct post-trial review of any matter without a timely objection.

A plain reading of Ryder does not support this argument, because the Tenth Circuit does not make any distinction between post-trial review by a district court and appellate review. Rather, the Tenth Circuit discusses the importance of post-trial review, even without a timely objection, when alleged misconduct affects "the underlying fairness of the entire trial." Ryder, 814 F.2d at 1424 n.25. This is consistent with decisions from other courts that permit post-trial review of alleged attorney misconduct without an objection under some circumstances. Fonten Corp. v. Ocean Spray

5

Cranberries, Inc., 469 F.3d 18, 22 (1st Cir. 2006) (holding that objections to statements made by counsel in closing arguments are presumed to be preserved for post-trial review without a timely objection); Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 346 (9th Cir. 1995) (constant objections during trial are not required when opposing counsel engages in continuous misconduct because constant objection tend to antagonize the jury).   The Court found that the alleged misconduct was so pervasive in this case that the Court should review the entire record, even when Ford failed to raise a timely objection, to ensure that Ford received a fair trial.   Plaintiffs' counsel has not cited any authority showing that the Court's decision was clearly in error,[5] and the Court finds that it was not an abuse of discretion, under these unique circumstances, to review plaintiffs' counsel's conduct in the absence of a timely objection.

*Court Did Not Advise Plaintiffs' Counsel That He Engaged in Improper Conduct*

Plaintiffs' counsel argues that he was not on notice that his conduct was even close to crossing the line between zealous advocacy and trial misconduct, and it is improper for the Court to use his conduct as a basis for ordering a new trial.   He states that "almost two-thirds of the way through trial the Court stated that it had not found that Plaintiffs' counsel committed any violation of its rulings."   See Dkt. # 313, at 1174-75.   This argument blatantly ignores the duty imposed on

---

[5]      Plaintiffs' counsel cites two cases noting the general rule that a timely objection is required to preserve an issue for post-trial or appellate review.   See Guides, Ltd. v. Yarmouth Group Property Management, Inc., 295 F.3d 1065, 1075 (10th Cir. 2002); Glenn v. Cessna Aircraft Co., 32 F.3d 1462, 1465 (10th Cir. 1994).   However, neither of these cases involves allegations of ongoing misconduct during trial, but simply state the general rule that a party must object to isolated instances of alleged misconduct to preserve an issue for post-trial review.   Therefore, plaintiffs' counsel has not shown that Ryder is inapplicable to the present case.

all attorneys to follow the Court's orders, and plaintiffs' counsel cites no authority supporting this argument.

Under the Oklahoma Rules of Professional Responsibility and the American Bar Association's ("ABA") Model Rules of Professional Responsibility, the duty to comply with the Court's orders falls squarely on the attorney. <u>See</u> Oklahoma Rules of Professional Responsibility §§ 3.4, 3.5; ABA Model Rules of Professional Responsibility §§ 3.4, 3.5. While it is proper for the court to "admonish counsel and warn him of a mistrial if his prejudicial conduct persists," too much interference from the trial judge can provide a basis for granting a new trial under Rule 59(a). <u>Ralph by Ralph v. Nagy</u>, 950 F.2d 326 (6th Cir. 1991). Plaintiffs' counsel has provided no legal support for his argument that the Court had an obligation to "dispute . . . counsel's advocacy during trial" or "suggest that counsel was misrepresenting evidence" before the Court could order a new trial. Dkt. # 322, at 5. As <u>Ralph</u> suggests, there is fine line between warning counsel to refrain from inappropriate conduct and interfering with an attorney's presentation of his client's case, and this Court finds that the better rule is to place the burden of complying with the Court's orders on the attorney.

Finally, the Court did not ever tell plaintiffs' counsel that he had not violated any of the Court's evidentiary rulings. As evidenced by the transcript, the Court simply stated that no formal findings had been made regarding any alleged violations of the Court's motion in limine ruling excluding evidence of Ford's lobbying activities with the National Highway Traffic Safety Administration ("NHTSA"):

> Ms. Quinn-Cooper: I don't want -- you know, I don't want to get into it. The problem is, Mr. Brewster spoke about this yesterday in violation of the Court's order, and I feel like I need to --

The Court: You may redirect based upon as far as he went yesterday.

Mr. Brewster: Your Honor, I will not let the record reflect that I violated any motion in limine.  I asked her --

The Court: I haven't made any finding in that regard.  Thank you.

Dkt. # 313, at 1174-75.  The Court did not make a finding that plaintiffs' counsel had not violated <u>any</u> motion in limine during the course of the trial, nor did the Court find that plaintiffs' counsel had not violated that particular motion in limine.  The Court simply had not made any finding at that point.

The Court had no duty to advise plaintiffs' counsel that his conduct could be the basis for a new trial, nor did the Court mislead plaintiffs' counsel into believing he had fully complied with the Court's motion in limine rulings.  This argument does not provide a legitimate basis to vacate the Court's decision to order a new trial.

<u>*Court Failed to Make a Reasonable Finding that Ford was Prejudiced*</u>

Plaintiffs' counsel argues that Ford was permitted to present its defenses to the jury, and there is no indication that Ford was prejudiced at trial.  According to plaintiffs' counsel, Ford's defense was based on three theories, and Ford was permitted to pursue all of its defenses over plaintiffs' objections.  Plaintiffs' counsel characterizes Ford's theories of the case as follows: "(1) vehicles that comply with [Federal Motor Vehicle Safety Standard] 216 are reasonably safe and non-defective; (2) the rollover was a severe accident; and (3) Tyler [Moody] was responsible for his own fatal 'bad decisions.'" Dkt. # 322, at 6.  Plaintiffs' counsel asserts that his conduct did not impede Ford's presentation of any of these defenses at trial.

The Court made extensive findings on this issue in its previous opinion and order, and plaintiffs' counsel shows a fundamental misunderstanding of the Court's basis for ordering a new

trial.  The Court did not order a new trial because Ford was prevented from presenting relevant evidence, nor did the Court suggest that plaintiffs' counsel prevented Ford from raising all of its defenses at trial.  Instead, the Court found that a new trial was necessary because the conduct of plaintiffs' counsel inflamed the jury with a desire to punish Ford.  In its opinion and order, the Court summarized its findings by stating that:

> plaintiffs' counsel violated in limine rulings as to other similar incidents, punishment and the Golden Rule, historical internal Ford documents, payments to expert witnesses, and he made personal attacks on Ford witnesses and counsel.  The combination of these violations, along with plaintiffs' counsel's improper conduct, leaves this Court with a firm conviction that Ford did not receive a fair trial . . . .  The trial transcript confirms that plaintiffs' counsel sought to inflame the jury. Beginning in his opening statement, plaintiffs' counsel violated the Court's in limine rulings excluding evidence of other similar incidents and internal Ford documents. Plaintiffs' counsel's repeated disregard for the Court's rulings, his "Golden Rule" argument, and his direct references to accountability and "sending a message" lead to the conclusion that the jury's award of noneconomic damages was partially punitive in nature.

Dkt. # 317, at 40-41.  The issue before the Court was never whether plaintiffs' counsel's conduct denied Ford the right to put on a specific defense at trial.  The Court found that plaintiffs' counsel's conduct created a substantial likelihood that the jury was motivated with a desire to punish Ford for perceived wrongdoing, largely based on improper arguments and inadmissible evidence.  This prejudiced Ford and required the Court to order a new trial.  Plaintiffs' counsel has not shown that the Court's finding that Ford was prejudiced was clear error or will result in manifest injustice, and the Court will not revisit its extensive findings on this issue.

*The Court Invaded the Province of the Jury by Speculating on the Jury's Deliberations*

Plaintiffs' counsel argues that his conduct did not impact the jury's verdict, and the Court engaged in sheer speculation when it determined that Ford was prejudiced by his conduct.  He asserts that an implicit part of the Court's opinion and order granting a new trial is that the jury must

have ignored the Court's jury instructions.  Specifically, he claims that the jury was instructed to disregard statements and comments by lawyers and to ignore evidence excluded by the Court.[6] Plaintiffs' counsel states that the jury was presented with overwhelming evidence supporting plaintiffs' claims for damages, and there is no objective evidence that the jury intended to punish Ford with its verdict.

The Court has not explicitly or implicitly questioned the deliberative process of the jury but, rather, the Court found that plaintiffs' counsel engaged in conduct that was likely to inflame the jury against Ford.  After carefully reviewing its opinion and order, the Court does not find that it speculated on the subject matter of the jury's deliberations.  Plaintiffs' counsel suggests that the amount of the jury verdict is objective evidence that jury followed the Court's instructions, and the Court has no authority to vacate the jury's verdict.  Plaintiffs cite Midwest Underground Storage, Inc. v. Porter, 717 F.2d 493 (10th Cir. 1983), for the principle that judge may not impeach a jury verdict based on the judge's belief that the jury misunderstood or misapplied the law.  However, that case is clearly inapplicable.  In Midwest Underground Storage, the Tenth Circuit found that the district court correctly refused to vacate a jury verdict based on alleged juror confusion, because the district court would have been required to speculate on the method used by the jury to reach the verdict.  Id. at 501.  In this case, the Court did not impeach the verdict based on the subject matter of the jury's deliberations, but the Court based its decision to order a new trial on its finding that

---

[6]     Plaintiffs' counsel suggests that the Court complimented the jury on their "extraordinary service" and this provides objective evidence that the jury followed the Court's instructions. However, this is part of a standard instruction used by this Court at the end of every jury trial and, in this case, the Court was particularly referring to the length of the jury's service.  See Dkt. # 315, at 1700.

plaintiffs' counsel's conduct prejudiced Ford.  Plaintiffs' counsel's argument has no merit, as the

Court did not invade the province of the jury, and this basis for reconsideration is denied.

*The Court's Order Is Not Intended to Punish Plaintiffs' Counsel*

The Court addressed this argument in its previous opinion and order, and it will not spend

a substantial amount of time reviewing it upon reconsideration.  The Court discussed plaintiffs'

counsel's argument that an order granting a new trial would constitute a form of punishment or

attorney discipline when it stated that:

> Plaintiffs argue that the Court can not order a new trial simply as a punitive measure
> to correct perceived violations of the Court's evidentiary rulings.  <u>See</u> <u>Maricopa</u>
> <u>County v. Maberry</u>, 555 F.2d 207, 219 (9th Cir. 1977).  The Court's decision to grant
> a new trial here should not be viewed as a punishment to plaintiffs but, instead, as
> a necessary corrective measure for the Court to protect the rights of all litigants that
> come before it.

Dkt. # 317, at 41.  The new trial is not intended as a punishment, as the Court has clearly stated, but

the Court has found that Ford was prejudiced by plaintiffs' counsel's conduct.  Although plaintiffs

may view a new trial as a hardship, the Court has a duty to protect Ford's right to receive a fair trial.

The Court did not err when it ordered a new trial based on its finding that Ford was prejudiced, and

there is no indication that the Court ordered a new trial with the desire to punish plaintiffs' counsel.

**B.**

Plaintiffs' counsel challenges the Court's findings that he repeatedly violated the Court's

evidentiary rulings.[7]  However, a motion to vacate is not the appropriate forum to examine whether

counsel technically complied with the Court's orders, as plaintiffs' counsel raised these same

---

[7]     Plaintiffs' counsel repeatedly states that the Court "accused" counsel of misconduct or
"complained" about his conduct in its opinion and order.  The Court's sole concern is
whether Ford was prejudiced by plaintiffs' counsel's conduct, not whether plaintiffs' counsel
engaged in attorney misconduct, and the Court made this clear in its opinion and order.

arguments in his response to Ford's motion for a new trial.  The Court has entered detailed findings on plaintiffs' counsel's compliance with the Court's rulings, and it will not reconsider issues that have already been decided.  However, to the extent that plaintiffs' counsel asserts that the Court committed clear error when it found that Ford was prejudiced by plaintiffs' counsel's conduct, the Court will consider those  issues now.

*Other Similar Incidents*

The Court determined that plaintiffs' counsel violated the Court's in limine ruling concerning the admissibility of evidence of other similar incidents.  Dkt. # 317, at 17.  Plaintiffs' counsel restates his objection to Ford's argument, and he argues that he never attempted to introduce evidence of other similar incidents in violation of the Court's ruling on Ford's motion in limine.  In its previous opinion and order, the Court noted that plaintiffs' counsel initially referred to other similar incidents in his opening statement, and that plaintiffs' counsel violated the Court's in limine ruling by discussing other similar incidents without first approaching the bench for a hearing outside the presence of the jury.  Throughout the trial, plaintiffs' counsel continued to rely on evidence of other similar incidents in a variety of circumstances, and the Court found that this prejudiced Ford.[8] The Court will not revisit every instance where it noted that plaintiffs' counsel improperly discussed evidence of other similar incidents, because the Court found that the pervasive and repeated nature of plaintiffs' counsel's conduct prejudiced Ford.  Even if the Court were to reconsider one or two separate instances where this evidence was discussed and find that plaintiffs' counsel did not violate

---

[8]     For example, plaintiffs' counsel asked plaintiffs' medical expert, Joseph Burton, M.D., what vehicle he believed rolled more than any other vehicle. Dkt. # 310, at 602.  This was clearly outside the scope of a medical expert's testimony and, even though Ford's objection was sustained, it is clear that plaintiffs' counsel was attempting to improperly interject evidence of other similar incidents into the trial.

12

a motion in limine ruling, this would not change the Court's overall conclusion that Ford was prejudiced by plaintiffs' counsel's conduct.  However, the Court will examine the most important argument raised by plaintiffs' counsel, specifically, that he did not improperly state that Explorer rollovers killed 10,000 people per year and that his analogy to the Iraq war did not prejudice Ford.

Although plaintiffs' counsel is correct that he was permitted to cross-examine Ford's engineering expert, Kenneth P. Orlowski ("Orlowski"), about the number of rollover accidents during 2004, the Court found that plaintiffs' counsel misstated Orlowski's testimony and this prejudiced Ford at trial.  Orlowski testified that there were 273,000 rollover accidents for all light vehicles during 2004, and these accidents accounted for approximately 24,000 serious injuries and 10,000 deaths.  It was not prejudicial for plaintiffs' counsel to elicit this testimony from Orlowski, but the Court found that plaintiffs' counsel stated that Ford Explorers, not just all light vehicles, caused 10,000 deaths per year.  In his closing argument, plaintiffs' counsel stated:

> as the Moodys tried to sort through what happened January 16th, what took this young man's life, and they began to ask questions and talk to people, they began to understand that what took their son's life was a not-too-well-kept secret in Detroit concerning the manufacture of the Ford Explorer, not-too-well-kept secret because when Ford Explorers roll, the roofs collapse.  273,000 rollovers in America, 24,0000 serious injuries, 10,000 deaths.

Dkt. # 315, at 1631.  Plaintiffs' counsel argues that some confusion may have been caused by his sentence structure, but he never stated that Explorers cause 10,000 deaths per year.  However, the Court did not commit clear error when it found that plaintiffs' counsel "clearly implied that Ford Explorers kill 10,000 people every year."  Dkt. # 317, at 18.

The most egregious statement by plaintiffs' counsel was his analogy between number of deaths caused by rollover accidents and the Iraq war:

13

> And she says, you know, we got 98 percent rollovers. Some roll over on just their side. And we got 2 percent. How about 24,000 people seriously injured? Ten thousand killed a year? We are all fed up with Iraq. But in three years since 2003, 2400 U.S. soldiers have died. But here we've got 10,000 killed by roofs, and that's okay for her and Ford. I don't think so.

Dkt. # 315, at 1689. Plaintiffs' counsel now asserts that he was simply giving a "real life example so that the jury could put the danger and harm of rollovers in context." Dkt. # 322, at 14. The Court fails to see how the Iraq war has any relevance to the number of rollover accidents during 2004 and, aside from misstating the evidence, the purely inflammatory nature of this statement certainly caused some prejudice to Ford. Plaintiffs' counsel has not offered any basis for the Court to find that an analogy to the Iraq war was relevant in a products liability case, and the Court did not err by considering the prejudicial impact of this statement when ruling on Ford's motion for a new trial.

The Court's finding that plaintiffs' counsel's improper references to other similar incidents prejudiced Ford is amply supported by the record, and plaintiffs' counsel has not presented a valid basis to reconsider this decision. Plaintiffs' counsel's constant references to other similar incidents had a prejudicial impact on Ford's presentation of its case, and the Court will not revisit its finding on this issue.

### *Punishment and the Golden Rule*

The Court found that plaintiffs' counsel encouraged the jury to punish Ford with its award of compensatory damages. Dkt. # 317, at 23-24. Plaintiffs' counsel asserts that Ford could not have been prejudiced by improper references to punishment in the liability phase of trial, because the jury did not find that Ford acted with reckless disregard nor did the jury award a separate amount of damages for the purpose of punishing Ford. In his closing argument, plaintiffs' counsel asked the jury to "add a dollar" to its award of compensatory damages specifically to send a message to Ford.

14

Dkt. # 315, at 1654.  He also advised the jury of the Court's procedure on punitive damages when he told them to check "we do" on the special interrogatory provided to the jury on the issue of reckless disregard "so [he has] an opportunity to talk to you again in this case . . . ."  Id. at 1693.

Plaintiffs' counsel claims that he did not improperly mention punitive damages or a second phase of trial in his closing argument and, even if he did, Ford could not have been prejudiced.  He asserts that no order of the Court prohibited plaintiffs' counsel from discussing trial procedures with the jury.  At the pretrial conference, the Court unambiguously informed the parties that "punitive damages are not mentioned in phase one" and that there would be "no mention of punitive damages unless and until you get a finding from the jury."  Dkt. # 210, at 7.  The Court did not create an exception for the parties to discuss the procedures for punitive damages with the jury, nor did plaintiffs' counsel request leave of court to address the Court's procedures on this issue in his closing argument.  Whatever his subjective intention might have been, plaintiffs' counsel has not offered a legitimate basis for discussing punitive damages with the jury in the liability phase of trial.  As the Court discussed in its opinion and order, the size of the jury's verdict suggested that the jury incorporated a punitive element into the award of compensatory damages, even if the jury did not specifically add a dollar to the verdict as plaintiffs' counsel suggested.[9]

---

[9]    Plaintiffs' counsel misunderstands the Court's comparison of the damages in this case to other similar cases.  The Court simply compared the amount of the verdict to other cases as objective evidence that Ford was prejudiced by the improper arguments of plaintiffs' counsel.  The Court has not set a ceiling on damages, nor has the Court suggested it would automatically remit the verdict or order a new trial if the damages in the re-trial approach or exceed the verdict in the first trial.  The Court noted that it did not find, nor had plaintiffs' counsel cited, a verdict in a similar case approaching $15 million and this was evidence that plaintiffs' counsel's conduct affected the jury's verdict.

In addition, the Court found that plaintiffs' counsel made improper "Golden Rule" arguments in his closing argument and, in his motion to vacate, plaintiffs' counsel has not provided any reasonable basis for the Court to conclude otherwise. He invited the jurors to place themselves in plaintiffs' position by informing the jury that the same injury could happen to them:

> It's going to happen. It might happen when you're on your way to school. It might happen when your mom takes your kids to day care. It might happen when you're in a rush to work. It might happen because a child runs out in front of you, and you try to avoid it. It's going to happen.

Dkt. # 315, at 1636-37. Counsel states that he never "suggested that any member of the jury would be personally involved in a rollover, suffer injuries similar to that of [decedent] or his parents or that they should award damages as if they were personally harmed." Dkt. # 322, at 14-15. The clear meaning of his statement shows otherwise, and the Court did not err when it determined that plaintiffs' counsel used a prohibited Golden Rule argument in his closing statement.

The record is clear that plaintiffs' counsel made inappropriate references to punishment as an element of compensatory damages. Even though plaintiffs' counsel states that he did not intend for "unscripted arguments" to be considered as a plea for punishment, the Court can not ignore the plain meaning of his pleas for the jury to punish Ford in the liability phase of trial. The Court finds that it did not err when it concluded that there was a "substantial likelihood that the award of compensatory damages contained a punitive element," and the Court will not reconsider its decision on this issue. Dkt. # 317, at 24.

*References to Internal Ford Documents Predating 1994*

Before trial, the Court excluded any reference to pre-1994 internal Ford documents except for the purpose of impeachment, but plaintiffs' counsel interpreted this ruling simply to exclude reference to one document, a 1968 internal memorandum known as the "Weaver memorandum."

16

Throughout the trial, plaintiffs' counsel and plaintiffs' expert, Stephen Forrest ("Forrest"), made continuous references to internal Ford documents to show Ford's alleged knowledge of a design defect.  In his motion to vacate, plaintiffs' counsel states that Ford's knowledge, regardless of the time period, is relevant in a manufacturer's products liability case.  During trial, the Court clarified its motion in limine ruling and stated:

> I reviewed my ruling in limine.  And I think it was correct.  And this is, I think, the appropriate way to proceed.  I had ruled that -- I don't know what the Weaver document is and how much this relates to the Weaver document.  But I have ruled that it was [in]admissible [sic] because it was so distant in time from the '95 Ford Explorer Sport.  However, when the Ford witnesses take the stand, you can ask them what they know about forces and roof crush and the extent of their knowledge.  And if -- you can use those documents for impeachment if there's testimony that at the time of the development of the Ford Explorer, they didn't know about the information that was contained in those documents.

Dkt. # 311, at 787-88.  The clear impact of this ruling was that pre-1994 internal Ford documents were not admissible as substantive evidence, but that plaintiffs' counsel could impeach Ford's witnesses to show that Ford had knowledge of a defect.  At no time did the Court suggest that plaintiffs' counsel or witnesses could refer to excluded documents to introduce the substance of pre-1994 internal Ford documents into evidence.

Plaintiffs' counsel attempts to show that he did not technically violate the Court's evidentiary ruling, in part, by suggesting that he was not responsible for Forrest's unsolicited commentary about Ford's knowledge of roof crush before 1994.  Based on Forrest's testimony at trial, it was clear that he was an experienced expert witness who should have known the effect of his statements on the jury.  In the hearing of the jury, the Court admonished Forrest for discussing irrelevant evidence, but the damage was already done.  See Dkt. # 316, at 905-06.  In addition, plaintiffs' counsel repeatedly attempted to use Ford's witnesses to introduce the contents of pre-1994 documents and

Ford's objections were sustained. Dkt. # 317 at 26-27. The Court has made specific findings that plaintiffs' counsel and Forrest violated the Court's in limine ruling on this issue, and plaintiffs' counsel has not cited any new evidence in the motion to vacate suggesting that the Court's ruling was incorrect. See Dkt. # 317, at 24-27. The Court did not err by considering the prejudicial impact of plaintiffs' counsel's and Forrest's improper references to pre-1994 internal Ford documents when it ruled that the trial was fundamentally unfair.

*Payments to Ford's Expert Witnesses*

Plaintiffs' counsel argues that he did not intend to interject any prejudicial information into the trial when he asked Ford's accident reconstruction expert, Kevan Granat ("Granat"), if his company had been paid $60 million over the last 10 years by Ford. Dkt. # 313, at 1301-02. Even if this information is accurate, plaintiffs' counsel ignored the Court's in limine ruling preventing direct questioning about the total amount paid to an expert's company. Although plaintiffs' counsel could have elicited this same evidence through impeachment of Granat or any other Ford witness, plaintiffs' counsel was essentially testifying as to the amount Ford paid to an expert by including the dollar amount as part of the question.[10] Plaintiffs' counsel could have asked about a witness' personal knowledge concerning the total amount of payments by Ford, but he instead chose to throw out specific dollar amounts. The Court has previously considered the same argument from plaintiffs' counsel, and determined that his questioning of Ford's witnesses purposefully sought to use inflammatory dollar amounts to prejudice the jury against Ford. Plaintiffs' counsel has not

_____

[10]    Plaintiffs' counsel suggests that evidence of Ford's payments to experts was relevant to a witness' bias, and that Ford asked similar questions to plaintiffs' witnesses. The problem noted by the Court was the prejudicial method of questioning, but the Court clearly stated that plaintiffs' counsel could ask about a witness' personal knowledge of the payments. See Dkt. # 317, at 30 n.10.

18

offered any new evidence on this issue, and the Court will not reconsider its finding that plaintiffs' counsel's questioning of Ford's experts as to the total amount of payments was improper and prejudicial.

*Attacks on Ford Witnesses and Counsel*

The Court previously found that plaintiffs' counsel made unnecessary personal attacks against Ford's witnesses and counsel that prejudiced Ford at trial.  Plaintiffs' counsel focuses on some of the comments cited by the Court, particularly his treatment of Ford's corporate representative, Deborah Marth, Ph.D., and his comments during his closing argument directed towards Ford's counsel.

Plaintiffs' counsel was permitted to question Ford's witnesses about any possible bias in favor of Ford and, contrary to plaintiffs' counsel's assertions, the Court has not questioned his right to do so.  It was proper for plaintiffs' counsel to ask Dr. Marth if Ford paid for her graduate education and he could certainly inquire about her employment history with Ford.  However, his questioning of Dr. Marth on several occasions crossed the line of zealous advocacy and became personally abusive of Dr. Marth.  The Court advised plaintiffs' counsel during trial that his conduct towards Dr. Marth was inflammatory and directed him to refrain from abusive questioning of Dr. Marth.[11]  Dkt. # 312, at 1140, 1151.  It was not error for the Court to refer to its statements to plaintiffs' counsel in support of its finding that plaintiffs' counsel engaged in abusive conduct towards Ford's witness.

---

[11]     Plaintiffs' counsel states that the Court never gave any indication during trial that his conduct towards any witness was improper.  In its previous opinion and order, the Court noted several instances where plaintiffs' counsel was warned that his treatment of witnesses was abusive, and this argument is meritless.  Dkt. # 312, at 1151; Dkt. # 313, at 1306; id. at 1392-93.

He also denies that he personally attacked Ford's counsel in his closing argument, and he claims that he was properly commenting on evidence cited by Ford's counsel in her closing argument.  According to plaintiffs' counsel, Ford's counsel engaged in similar personal attacks against him, and the Court ignored the evidence cited in his response to Ford's motion for a new trial.  In his response, plaintiffs' counsel stated Ford's counsel "invoked [his] name with in [sic] a sardonic tone no less that thirty times during her closing," but he has yet to include any citations to the transcript to support this assertion.[12] Dkt. # 302, at 32.  The Court can not find any evidence that Ford's counsel personally attacked plaintiffs' counsel during the trial.  However, the record is clear that plaintiffs' counsel made several inappropriate comments about Ford's counsel, including the following passage:

> They can use all the trick photography they want.  They can get on their bellies and take a picture of the B-pillar and say, look at how much room that's in here.  <u>I will give her any verdict if she could crawl in there.</u>  I can't.  It's not possible to crawl in this vehicle because the roof is below the steering wheel. . . . <u>She can take all the trick photography</u> -- this is a straight shot.

Dkt. # 1689-90 (emphasis added).  The Court found that the jury should have been permitted to consider the evidence without this unnecessary attack on Ford's counsel, and this finding was not in error.  Plaintiffs' counsel was not simply commenting on the evidence, as he suggests, but rather, he was commenting on the credibility of Ford's counsel.  The Court's finding that Ford was prejudiced by plaintiffs' counsel's comments about Ford's witnesses and counsel is supported by the record, and the Court will not reconsider this finding.

---

[12]     During her closing argument, Ford's counsel referred to plaintiffs' counsel as "Mr. Brewster," but the Court does not find any sarcastic or negative references to plaintiffs' counsel in the closing argument by Ford's counsel.

## C.

The Court has reviewed plaintiffs' counsel's arguments and finds that he has not presented any basis for the Court to reconsider its opinion and order granting Ford's motion for a new trial. The Court's findings are supported by references to the trial transcript, and the Court has no doubt that Ford was prejudiced by the conduct of plaintiffs' counsel at trial. Plaintiffs' counsel primarily asserts arguments that the Court has already considered and rejected, but this is not the purpose of a motion to reconsider. Without new evidence, intervening case law directly on point, or a clear showing that the Court's previous decision was in error, a motion to reconsider should not be granted. Van Skiver, 952 F.2d at 1243. Plaintiff has not presented any valid basis for reconsideration, and the plaintiffs' motion is denied.

## IV.

In the alternative, plaintiffs ask the Court to limit the new trial solely to the issue of damages, because the Court found that there was sufficient evidence to support the jury's verdict on the issue of liability. Under Rule 59, a court has the authority to order a new trial on "all or part of the issues" tried to a jury. See MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express Inc., 886 F.2d 1249, 1262 (10th Cir. 1989) (affirming district court's decision to order new trial on one of plaintiff's claims without ordering a complete new trial). "A new trial on part of the issues is appropriate where 'it clearly appears that the issue to be retried is so distinct and separate from the others that a trial of it alone may be without injustice.'" K-B Trucking v. Riss Int'l Corp., 763 F.2d 1148, 1163 n.22 (10th Cir. 1985) (quoting Gasoline Prod. Co. v. Champlin Refining Co., 283 U.S. 494, 500 (1931)). A new trial solely on the issue of damages is not appropriate if the issues of

liability and damages are intermingled.  Brown v. Richard H. Wacholz, Inc., 467 F.2d 18, 21 (10th Cir. 1972).

The Court has carefully considered plaintiffs' request, but the Court finds that a new trial on the issue of damages only would not cure the prejudice suffered by Ford.  Ford did not move for a new trial on the grounds that the damages were excessive, but it claimed that the trial was fundamentally unfair.  The Court clearly stated that the cumulative effect of the prejudice caused by plaintiffs' counsel's conduct "[left] this Court with a firm conviction that Ford did not receive a fair trial."  Dkt. # 317, at 40.  Plaintiffs' counsel misunderstands the basis for the Court's decision to grant Ford's motion for a new trial.  The Court did not simply find "that council's [sic] advocacy improperly motivated the jury into awarding damages that were 'partially punitive in nature'" but, rather, the Court found that plaintiffs' counsel's conduct created a substantial likelihood that the jury was prejudiced against Ford.  Dkt. # 322, at 23.  In this situation, the issues of liability and damages are intertwined, because much of the improper evidence plaintiffs' counsel introduced at trial went to the issue of liability as well as damages.   By itself, the improper use of evidence of other similar incidents justifies a new trial on all issues.  See Julander v. Ford Motor Co., 488 F.2d 839, 849 (10th Cir. 1973) (improper admission of 7 similar incidents was prejudicial and required a retrial on all issues).  The issues requiring a new trial are not severable into distinct categories of liability and damages, and the Court ordered a retrial on all issues to prevent prejudice to Ford.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Vacate Opinion and Order [Dkt. # 317] or, in the alternative, Motion to Amend Opinion [Dkt. # 317], Request for Hearing and Supporting Brief to All (Dkt. # 322, 323) is **denied**.

**DATED** this 18th day of June, 2007.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE